IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROGER COCKER,

Plaintiff,

v.                                                                                   No. 12-1239-DRH

TERMINAL RAILROAD
ASSOCIATION OF ST. LOUIS
PENSION PLAN FOR
NONSCHEDULE EMPLOYEES,

Defendant.

MEMORANDUM and ORDER

HERNDON, District Judge:

I. Introduction and Background

Now before the Court are cross motions for summary judgment. Both parties maintain that they are entitled to summary judgment on plaintiff's ERISA cause of action. Defendants argue that Section 5.5 of the Terminal Railroad Association of St. Louis Pension Plan ("the Pension Plan") should be read to mean payable at the participants' Normal Retirement Date, meaning that plaintiff's gross benefit should be reduced by the amount that was payable to him under the Union Pacific Pension Plan at his normal retirement age ($2,311.73). Plaintiff counters that the term payable refers to the benefit the participant is actually receiving,

either his reduced early retirement benefit or his unreduced benefit at Normal Retirement Age as the case may be, meaning that the offset should be the amount actually paid to him as an early retirement benefit under the Union Pacific Pension Plan ($1,022.94). Based upon the record and the applicable case law, the Court **GRANTS** plaintiff's motion for summary judgment and **DENIES** defendant's motion for summary judgment.

On December 12, 2012, Roger Cocker sued the Terminal Railroad Association of St. Louis Pension Plan for Nonschedule Employees under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) to recover benefits under the terms of the Pension Plan (Doc. 2). On January 22, 2013, Cocker filed an amended complaint (Doc. 13). On May 31, 2014, the Court granted a joint motion to stay this case awaiting a decision in a similar case, *Ingram v. Terminal Railroad Association of St. Louis Pension Plan for Nonschedule Employees*, Case No. 4:11-cv-01327-HEA, pending in the District Court for the Eastern District of Missouri (Doc. 26).[1] On November 5, 2104, the Court granted Cocker's motion to lift the stay finding that a ruling on the merits based on Seventh Circuit case law was warranted (Doc. 40). Thereafter, the parties filed these cross motions for summary judgment. As the motions are ripe, the Court turns to address the merits.

---

1 Both cases present the issue of how to apply an offset provision included in the Pension Plan. The *Ingram* case is currently on appeal before the Eighth Circuit Court of Appeals.

## II. Facts[2]

From December 1, 2006 until January 31, 2010, Cocker was employed by Terminal Railroad Association of St. Louis ("Terminal Railroad"). While employed at Terminal Railroad, Cocker was a participant in the Pension Plan. Prior to his employment with Terminal Railroad, Cocker was employed by the Union Pacific Railroad ("Union Pacific") and its predecessor railroads and had accumulated 34 years and 10 months of Benefit Service under the Pension Plan for Salaried Employees of Union Pacific Corporation ("Union Pacific Plan").

On December 1, 2009, Cocker, having met the eligibility rules for early retirement under the Union Pacific Plan, elected to receive early retirement benefits from the Union Pacific Plan in the form of a single life annuity. Cocker received $1,022.94 a month. At this time, Cocker was 55 years old. If Cocker had delayed his retirement from the Union Pacific Plan to normal retirement age, his pension from the Union Pacific Plan would have been $2,311.73 per month. The difference between the normal retirement benefits Cocker could have received if he had delayed his Union Pacific Plan retirement to normal retirement age, and the actual benefits he received from the Union Pacific Plan be electing early retirement is $1,288.79 per month which is the disputed excess offset.

Section 5.1(a) of the Pension Plan document provides that a participant's normal retirement benefit is calculated using the following formula:

(a) One and one-half percent (1.5%) of the Average Monthly Earnings

---

[2] The facts are not in dispute as the issue is the interpretation of the Pension Plan.

>of the Participant, multiplied by the number of years of Benefit Service of the Participant.

Section 3.6 of the Pension Plan document provides that Benefit Service includes full time service with other railroads and states:

>Benefit Service shall also include all full time service with any other railroad company, terminal or station company, joint facility, railroad association, railroad or transportation bureau; or any transportation agency of the United States Government that preceded participation in this Plan (but see offset provisions in Section 5.5).

In calculating Cocker's retirement benefits from the Pension Plan, Cocker's service under the Pension Plan and his service with the Union Pacific and its predecessor railroads were combined, and totaled 38 years of Benefit Service.

Section 5.5(b) of the Plan defines the "offset" referred to in Section 3.6 of the Pension Plan document and provides in part:

>"Section 5.5 Benefit Offset.   Notwithstanding anything to the contrary in the Plan:
>
>(b)The retirement income benefit payable under this Plan shall be offset by the amount of retirement income payable under any other defined benefit plan maintained by any other Company or agency that is not a member of the Controlled group that is qualified under Section 401 of the Code to the extent that the benefit under such plan or plans is based on Benefit Service taken into account in determining benefits under this Plan.
>In the event the benefit under such another plan is paid in a form other than the form of payment under this Plan, including without limitation a single lump sum cash payment made prior to retirement, the amount of such offset shall be the dollar amount per month of the benefit that would have been payable under such other plan in the form of a Single Life Annuity commencing on the Participant's Normal Retirement Date."

The 2002 Pension Plan's Summary Plan Description has explained the offset

rule as:

> "You may be eligible to receive additional credit for prior service with any other railroad or transportation company, terminal or station company, joint facility, railroad association, railroad, or any transportation agency of the United States Government; if so your benefit under the Plan will be offset by the benefits received from any other plans based on the same service."

The Pension Plan applied an offset of $2,311.75 per month for normal retirement benefits related to the Union Pacific Plan. On January 22, 2010, Cocker filed his initial claim regarding the offset to his Pension Plan pension for retirement income. On January 29, 2010, Chief Financial Officer of Terminal Railroad, Kerry Paubel denied Cocker's claim. On February 26, 2010, Cocker filed his appeal to the denial of his claim regarding the offset and on June 15, 2010, Paubel denied Cocker's appeal.

Under the terms of the Plan, Section 14.4, the Plan Sponsor, Terminal Railroad, is the default Plan Administrator with authority to decide claims and appeals. Section 14.4 states that the identity of the Plan Administrator may be changed "provided that such charges are published to the extent of enabling interested parties to ascertain the person or persons responsible for operating the Plan." The most current Summary Plan Description was published in February 2002 and provides that Terminal Railroad is the Plan Administrator. Kerry Paubel's purported appointment as the Plan Administrator was never published. In 2010, when Paubel decided Cocker's claim and appeal, Paubel was not aware that he was the Plan Administrator of the Pension Plan.

### III. Motion to Strike

Before turning to the summary judgment motions, the Court must determine defendant's motion to strike as it relates to the motions for summary judgment (Doc. 48). Specifically, defendant moves the Court to strike exhibits 4, 5 and 6 of plaintiff's addendum which are correspondence and emails from cases pending in the Eastern District of Missouri, *Ingram* and *Smith v. Terminal Railroad Association of St. Louis Pension Plan for Nonschedule Employees*, Cause No. 4:13-cv-02500-RWS, and an affidavit by plaintiff's counsel. Defendant contends that these exhibits are not part of the administrative record in this case, and thus, the Court should not consider them. Plaintiff counters that the Court may consider them under the doctrine of judicial notice and Federal Rule of Evidence 201. The Court agrees with plaintiff.

In reviewing the denial of ERISA benefits under 29 U.S.C. § 1132(a)(1)(B), the court is generally limited to consideration of the administrative record. *Majeski v. Metro. Life Ins. Co.,* 590 F.3d 478, 482–83 (7th Cir. 2009). Evidence beyond the record may be considered concerning a conflict of interest, misconduct, or bias on the part of the decisionmaker. *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 115–19, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008); *Semien v. Life Ins. Co. of N. Am.,* 436 F.3d 805, 814–15 (7th Cir. 2006). But allowing new evidence not in the administrative record on a conflict of interest claim does not open the gates to any and all evidence to challenge the administrative findings. *Semien,* 436 F.3d at 814–15. Rather, the administrative

findings are examined on the basis of the administrative record. Outside evidence concerning a possible conflict of interest may be one factor to weigh in determining whether the administrative decision should stand under the applicable standard of review. *Glenn,* 554 U.S. at 117, 128 S.Ct. 2343; *see Holmstrom v. Metro. Life Ins. Co.,* 615 F.3d 758 (7th Cir. 2010) (discussing administrative record before turning to conflict of interest).

Here, plaintiff supplements the record with a September 9, 2013 letter from Patricia A. Winchell to James L. Singer regarding the *Smith* case which states in part: "Mr. Paubel is the plan administrator for the Terminal Railroad Association of St. Louis Pension Plan for Nonschedule Employees. … A redacted copy of the minutes of the February 2, 2002 Special Meeting of the Board of Directors at which Mr. Paubel was appointed is enclosed. The company has not located any publication of a change in the plan administrator since that date. Mr. Paubel is currently and at all times since the claim involving Mr. Smith's pension was received has been the Chief Financial Officer of Terminal Railroad Association of St. Louis." (Doc. 46-1 p. 24). Further, plaintiff supplements the record with an October 27, 2010 email exchange between Ted Ingram and Kerry Paubel regarding the *Ingram* case in which Paubel states in part: "Terminal Railroad Association is the Plan Administrator of the Terminal Railroad Association of St. Louis Pension Plan for Nonschedule Employees. I have been designated to carry out certain responsibilities under the Plan, including responding to your claim." (Doc. 46-1, p. 25). Lastly, plaintiff supplements the record with an affidavit from his attorney,

Mr. Singer, affirming where the preceding documents came from (Doc. 46-1, ps. 27-28). Based on the claims asserted this case; Paubel's decisions as the Plan Administrator regarding Cocker's claims and as his role as the Chief Financial Officer of the Railroad; and the language contained in the Plan Document regarding who was the Plan Administrator, the Court finds that these documents clearly are relevant and pertinent to the issues in this case.[3] Thus, the Court concludes that it is proper to consider these documents. Therefore, the Court denies the motion to strike and proceeds to resolving the cross motions for summary judgment.

### IV. Summary Judgment

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would-as a matter of law-conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial … against the moving party." *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch,* 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. 317, 106 S.Ct. 2548, 91

---

[3] Mr. Singer is counsel to both Mrs. Smith and Mr. Ingram.

L.Ed.2d 265. The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston,* 384 F.3d 838, 842 (7th Cir. 2004). The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion. *Id.* at 483.

## V. Analysis

Under ERISA, judicial review of a plan administrator's benefits determination is *de novo* unless the plan grants discretionary authority to the administrator. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 636-37 (7th Cir. 2005). Where a qualifying plan gives the administrator discretionary authority to determine eligibility for benefits, the court shall review the administrator's decision to deny benefits under the arbitrary and capricious standard. *Mote v. Aetna Life Ins.* Co., 502 F.3d 601, 606 (7th Cir. 2007); *Hackett v. Xerox Corp.,* 315 F.3d 771, 773 (7th Cir. 2003). And to determine whether a plan administrator has discretionary authority, the Court looks to the plain language of the plan. *Postma v. Paul Revere Life Ins. Co.,* 223 F.3d 533, 538 (7th Cir. 2000). Here, the plan grants the administrator the discretion to determine

eligibility and construe the plan terms. Hence, Court reviews the decision to terminate the benefits under the arbitrary and capricious standard.

Under the arbitrary and capricious standard the Court may overturn an administrator's decision only if the decision is "downright unreasonable." *Mote,* 502 F.3d at 606. This standard is deferential, but it is not a "rubber stamp," as the Court will not uphold a denial of benefits if the plan administrator fails to articulate specific reasons for rejecting evidence and denying the claim. *Black v. Long Term Disability,* 582 F.3d 738, 745 (7th Cir. 2009) (citing *Williams v. Aetna Life Ins. Co.,* 509 F.3d 317, 324 (7th Cir. 2007)); *Schane v. International Brotherhood of Teamsters Pension Fund*, 760 F.3d 585, 589 (7th Cir. 2014). The court's ultimate goal is to ensure that the plan administrator's decision has rational support in the record. *See Speciale v. Blue Cross & Blue Shield Ass'n,* 538 F.3d 615, 621 (7th Cir. 2008); *Exbom v. Central States S.E. & S.W. Areas Health & Welfare Fund,* 900 F.2d 1138, 1143 (7th Cir. 1990) (explaining that there must be a rational connection between the facts found and the administrator's decision). In making its determination, a reviewing court must consider: (1) the administrator's impartiality; (2) the complexity of the issues; (3) the process afforded the parties; (4) the extent to which the administrator utilized experts; and (5) the soundness of the administrator's rationale. *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir. 1995).

Among other considerations, the court must weigh an administrator's conflict of interest as "a key consideration." *Holmstrom,* 615 F.3d at 766–67. A

conflict of interest arises "when the administrator has both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due." *Jenkins v. Price Waterhouse Long Term Disability Plan,* 564 F.3d 856, 860–61 (7th Cir. 2009). As such, the Court will weigh this conflict of interest in its decision.

Cocker argues that Paubel abused his discretion in the amount used to offset Cocker's Union Pacific retirement benefit as Paubel ignored the plain meaning of the Pension Plan document terms. Terminal Railroad Pension Plan argues that Section 5.5 should reasonably and properly be read to mean payable at the participant's at his Normal Retirement Date.[4] Here, Paubel determined that Cocker's benefit should be reduced by the amount Cocker would have received at the normal retirement age of 65, rather than the amount actually paid to Cocker by reason of his early retirement. The Court agrees with Cocker. The Court finds that Paubel's appeal decision conflicts with the plain meaning of the Pension Plan document terms and therefore violates the discretionary review. The resolution of Cocker's claim turns on the meaning of Section 5.5(b) of the Pension Plan document that the offset to his pension is to be for "retirement income payable under any other defined benefit plan maintained by any other Company … to the extent the benefit under such plan or plans is based on Benefit Service taken into

---

4 Terminal Railroad Pension Plan urges the Court to follow Judge Autrey's decision in *Ingram* finding that the plan administrator's interpretation and application was not arbitrary and capricious. As noted by the parties, Judge Autrey's decision is not binding on this Court. *See Midlock v. Apple Vacations West, Inc.,* 406 F.3d 453, 457 (7th Cir. 2005) (collecting cases) ("A district court decision does not have stare decisis effect; it is not a precedent."). Thus, the Court respectfully disagrees with Judge Autrey's reasoning.

account in determining benefits under the Pension Plan." It is uncontested that Cocker's service under the Union Pacific Plan was taken into account in calculating his pension from the Pension Plan. The plain reading of Section 5.5(b) requires resolution of what was the amount of retirement income payable from the Union Pacific Plan, in February 2010 when Cocker retired from Terminal Railroad and started his pension from the Terminal Pension Plan. The Court further finds that Cocker's Union Pacific Plan early retirement of $1,022.94 per month is the amount of "retirement income payable." Before Cocker retired early from the Union Pacific, his normal retirement benefits were conditional up to Cocker living to normal retirement age. Since Cocker retired early from Union Pacific, he will never be eligible for normal retirement benefits. Thus, the higher normal retirement benefits from the Union Pacific Plan are not payable and will never be payable to Cocker.

Moreover, the second paragraph of Section 5.5(b) states: "In the event that the benefit under such another plan is paid in a form other than the form of payment under this Plan…." The use of the term "is paid" supports the reading of the Plan document that the offset is based upon the actual benefit payable and received from the Union Pacific Plan. There is no difference between the Pension Plan document term "is paid" and the "benefits paid." "Is paid" is contrary to Terminal Railroad Pension Plan's reading of the Plan Document that the offset is based on normal retirement benefits regardless of when and whether the benefit "is paid." Paubel in denying the claim, concluded that the second paragraph of

Section 5.5(b) "is not relevant to the calculation of your benefit."

Further, the SDP describes the offset as "benefits received from any other plans." This language supports Cocker's reading of the Pension Plan document and conflicts with Terminal Railroad Pension Plan's position.

Also, the Pension Plan document deals with the subject of offsets in two contexts and the Court finds that the Pension Plan's reading is in conflict with them. Sections 5.1(a) and (b) deal with benefits payable from the Railroad Retirement System. Section 5.1(a) references the "Railroad Retirement Annuity" as an offset which is defined in Section 2.27. This offset is defined specifically as excluding supplements, "without regard to whether such amounts actually commences to be paid." If "retirement income payable" had the meaning advanced by the Pension Plan, it would have been simple to state the offset as Railroad Retirement annuity "payable." The Pension Plan's reading makes the language "without regard to such amounts actually commences to be paid" unnecessary and violates the Seventh Circuit rule to reed plan language consistently. *See Schane v. International Brotherhood of Teamsters Pension Fund*, 760 F.3d 585, 592 (7th Cir. 2014).

Moreover, the second offset in the Pension Plan document is in the second paragraph of Section 5.5(b) where the other railroad pension plans benefit "is paid" in a lump sum. The Court finds that the "is paid" Pension Plan document term conflicts with the Pension Plan's reading. As with Section 2.27, the second paragraph of Section 5.5(b) directs that there be the hypothetical calculation for

"the dollar amount that would have been payable under such plan in the form of a Single Life Annuity commencing on the Participant's Normal Retirement Date." Plan Section 5.5(b) offset for "retirement income payable" does not have this language directing a hypothetical calculation. Thus, the Pension Plan's reading of this language into Section 5.5(b) offset for "retirement income payable" violates the Seventh Circuit rule in *Schane* that plan terms are to be read consistently. Furthermore, the Court rejects Terminal Railroad Pension Plan's "apples to apples" argument as it flies in the face of the document language about offsetting what the participant is getting paid. The Court finds that Cocker's Union Pacific Plan early retirement benefit is the actuarial equivalent to his Union Pacific normal retirement benefit, thus, Pension Plan document section 5.2's "retirement income payable" rule already provides the "apples to apples" treatment.

## VI. Conclusion

Accordingly, the Court **GRANTS** plaintiff's motion for summary judgment (Doc. 45) and **DENIES** defendant's motion for summary judgment (Doc. 43). Also, the Court **DENIES** defendant's motion to strike (Doc. 48). Further, the Court **FINDS** in favor of plaintiff Roger Cocker and against defendant Terminal Railroad Association of St. Louis Pension Plan for NonSchedule Employees. The Court **AWARDS** Roger Cocker the excess pension offset of $1,288.79 under the Pension Plan, plus prejudgment interest and attorney's fees and costs. The Court **DIRECTS** Cocker to submit a brief with supporting documentation on these issues

on or before June 24, 2015 and **ALLOWS** Terminal Railroad Association of St. Louis Pension Plan for NonSchedule Employees up to and including July 8, 2015, to file a response to those calculations. Thereafter, the Court will enter final judgment.

**IT IS SO ORDERED.**

Signed this 10th day of June, 2015.

Digitally signed by
David R. Herndon
Date: 2015.06.10
12:03:03 -05'00'

**United States District Court**